IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF UBS COMMERCIAL MORTGAGE TRUST 2017-C5, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2017-C5,**<br><br>Plaintiff,<br><br>v.<br><br>**DELSHAH 60 NINTH LLC, DELSHAH GANSEVOORT 69, LLC, MICHAEL K. SHAH, BOARD OF MANAGERS OF THE PORTER HOUSE CONDOMINIUM, and AVISON YOUNG-NEW YORK LLC,**<br><br>Defendants. | CIVIL ACTION<br><br>NO. |

## COMPLAINT

Plaintiff, Wells Fargo Bank National Association, as Trustee for the benefit of the registered holders of UBS Commercial Mortgage Trust 2017-C5, Commercial Mortgage Pass-Through Certificates, Series 2017-C5 ("Lender"), acting by and through its special servicer, K-Star Asset Management LLC ("K-Star"), for its complaint against defendants, avers as follows:

**I.    PARTIES, JURISDICTION AND VENUE**

1. Wells Fargo Bank, National Association, is a national banking association with its main office, as designated in its Articles of Association, located in Sioux Falls, South Dakota. Non-party K-Star is the Special Servicer for Lender with respect to the Loan (as defined below).

2. Defendant Delshah 60 Ninth LLC ("Ninth Avenue Borrower") is a New York limited liability company with its principal place of business c/o Delshah Capital, LLC, 114 East 13th Street, Front 1, New York, New York 10003. Upon information and belief, Ninth Avenue Borrower's members are Michael Shah (Principal), Ranjana Shah, Dr. Darshan Shah and the Darshan Shah Irrevocable Trust F/B/O Michael Shah, all of whom are citizens of New York, and none of Ninth Avenue Borrower's members is a citizen of South Dakota.

3. Defendant Delshah Gansevoort 69, LLC ("Gansevoort Borrower," and together with Ninth Avenue Borrower, "Borrower"), is a New York limited liability company with its principal place of business c/o Delshah Capital, LLC, 114 East 13th Street, Front 1, New York, New York 10003. Upon information and belief, Gansevoort Borrower's members are Michael Shah (Principal), Ranjana Shah, Dr. Darshan Shah and the Darshan Shah Irrevocable Trust F/B/O Michael Shah, all of whom are citizens of New York, and none of Gansevoort Borrower's members is a citizen of South Dakota.

4. Defendant Michael K. Shah ("Guarantor") is an individual and a citizen of New York with an address of 114 East 13th Street, Front 1, New York, New York 10003. Guarantor is named as a defendant herein to the extent necessary to preserve Lender's potential deficiency claim on the Guaranty (as defined below).

5. Defendant the Board of Managers of the Porter House Condominium (the "Board"), an unincorporated association, is a condominium board of managers acting on behalf of all unit owners of the Porter House Condominium (the "Condominium"), a residential condominium located at 66 9th Avenue, New York, New York. Upon information and belief, all of the unit owners of the Condominium are citizens of New York with the exception of the owner of Unit 7E, who is a citizen of Arizona, the owners of Units 8E and 8W, who are citizens of

2

California, and the owner of Unit PHW, who has dual Brazilian and Italian citizenship, and none of the unit owners of the Condominium is a citizen of South Dakota. The Board is named as a defendant due to its subordinate *lis pendens* and/or lien(s) on the mortgaged property.

6.  Defendant Avison Young-New York LLC ("Avison Young") is a limited liability company with an address at 530 5th Avenue, 4th Floor, New York, New York 10036. Upon information and belief, the members of Avison Young are Avison Young (USA) Inc., a corporation existing under the laws of Illinois with its principal place of business in Illinois, Mark E. Rose, who is a citizen of Illinois, William A. Torzolini, who is a citizen of Florida, Michelle Osburn, who is a citizen of Illinois, Keith Lipton, who is a citizen of Virginia, Bruce Emtage, who is a citizen of New Jersey, Harry Klaff, who is a citizen of Virginia, Stephen Silverstein, who is a citizen of California, and CDP Investissements Inc., a Canadian corporation with its principal place of business in the province of Quebec, and none of Avison Young's members is a citizen of South Dakota. Avison Young is named as a defendant due to its subordinate lien on the mortgaged property.

7.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and the action is between citizens of different states.

8.  Venue exists in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because the real property that is the subject of this action is situated in this district.

## II. FACTS

### A. The Original Loan Transaction

9.  Ninth Avenue Borrower is the owner of the fee estate in certain real property located at 58-60 Ninth Avenue in the City, County and State of New York, as more fully described in Exhibit A-1 (Legal Description – Ninth Avenue Property) to the Mortgage (as defined below) and referred to herein as the "Ninth Avenue Land."

10. Gansevoort Borrower is the owner of the fee estate in certain real property located at 69 Gansevoort Street in the City, County and State of New York, as more fully described in Exhibit A-2 (Legal Description – Gansevoort Property) to the Mortgage (as defined below) and referred to herein as the "Gansevoort Land" and, together with the Ninth Avenue Land, the "Land."

11. On or about August 4, 2017, Cantor Commercial Real Estate Lending, L.P. ("Original Lender"), issued to Borrower a commercial mortgage loan in the principal amount of $28,000,000.00 (the "Loan").

12. The Loan is evidenced by an Amended, Restated and Consolidated Promissory Note dated August 4, 2017, executed by Borrower in favor of Original Lender in the principal amount of $28,000,000.00 (the "Note"), a copy of which, with subsequent allonges, is attached hereto as ***Exhibit A***.

13. The Note consolidated certain pre-existing promissory notes executed by Borrower.

14. To secure repayment on the Note, Borrower executed in favor of Original Lender an Amended, Restated and Consolidated Mortgage and Security Agreement dated as of August 4, 2017 (the "Mortgage"), a copy of which is attached hereto as ***Exhibit B***, which consolidated, restated and amended in their entirety certain pre-existing mortgages with respect to the Land, the earliest of which was recorded on May 20, 2002. *See* Ex. B (Mortgage), Schedule II (Prior Mortgage). The Mortgage was recorded with the Office of the City Register of the City of New York (the "Recorder") on September 13, 2017, as CRFN 2017000340263.

15. Pursuant to the Mortgage, Borrower granted to Original Lender a security interest in, *inter alia*, certain personal property (the "Personal Property") as more fully described

in Section 1.1(g) of the Mortgage, which is incorporated herein by reference. *See* Ex. B (Mortgage) § 1.1(g) (Personal Property).

16. Borrower perfected its lien and security interest in the Personal Property via a UCC-1 Financing Statement, a copy of which is attached hereto as ***Exhibit C***, which was filed with the New York Secretary of State (the "Secretary") on August 10, 2017, as Filing No. 201708100393168.

17. The Loan is also evidenced by a Loan Agreement between Borrower and Original Lender dated as of August 4, 2017 (the "Loan Agreement"), a copy of which is attached hereto as ***Exhibit D***.

18. In consideration for the Loan, Guarantor executed in favor of Original Lender a Guaranty of Recourse Obligations dated August 4, 2017 (the "Guaranty"), a copy of which is attached hereto as ***Exhibit E***. The Note, the Mortgage, the Loan Agreement, the Guaranty and various other documents executed by Borrower and/or Guarantor in favor of Original Lender with respect to the Loan are collectively referred to herein as the "Loan Documents."

B. **The Securitization and Assignment of the Loan to Lender**

    i. **The First Loan Assignment**

19. Original Lender assigned the Loan to CCRE Lifeco Loan Seller, L.P. ("First Assignee") (the "First Loan Assignment").

20. In connection with the First Loan Assignment, Original Lender delivered the original Note to First Assignee with an Allonge, which is firmly affixed thereto. *See* Exhibit A (Note with Allonges).

21. Also in connection with the First Loan Assignment, Original Lender executed in favor of First Assignee an Assignment of Mortgage dated November 20, 2017, a copy

5

of which is attached hereto as **Exhibit F**, which was recorded with the Recorder on January 9, 2018, as CRFN 2018000010024.

22. Original Lender also assigned its interest in the Personal Property to First Assignee via a UCC-3 Amendment, a copy of which is attached hereto as **Exhibit G**, which was filed with the Secretary on January 9, 2018, as Filing No. 201801098013434.

### ii. The Second Loan Assignment

23. First Assignee then reassigned the Loan back to Original Lender (the "Second Loan Assignment").

24. In connection with the Second Loan Assignment, First Assignee delivered the original Note to Original Lender with an Allonge, which is firmly affixed thereto. *See* Exhibit A (Note with Allonges).

25. Also in connection with the Second Loan Assignment, First Assignee executed in favor of Original Lender an Assignment of Mortgage dated November 20, 2017, a copy of which is attached hereto as **Exhibit H**, which was recorded with the Recorder on January 9, 2018, as CRFN 2018000010027.

26. First Assignee also assigned its interest in the Personal Property to Original Lender via a UCC-3 Amendment, a copy of which is attached hereto as **Exhibit I**, which was filed with the Secretary on January 9, 2018, as Filing No. 201801098013472.

### iii. The Third Loan Assignment

27. The Loan was then securitized and assigned by Original Lender to Lender (the "Third Loan Assignment").

28. In connection with the Third Loan Assignment, Original Lender delivered the original Note to Lender with an Allonge, which is firmly affixed thereto. *See* Exhibit A (Note with Allonges).

29. Also in connection with the Third Loan Assignment, Original Lender executed in favor of Lender an Assignment of Mortgage dated November 20, 2017, a copy of which is attached hereto as **Exhibit J**, which was recorded with the Recorder on January 9, 2018, as CRFN 2018000010030.

30. Original Lender also assigned its interest in the Personal Property to Lender via a UCC-3 Amendment, a copy of which is attached hereto as **Exhibit K**, which was filed with the Secretary on January 9, 2018, as Filing No. 201801098013484.

  **C.**  **Relevant Contractual Provisions**

31. The Mortgage secures, *inter alia*, Borrower's repayment of the Consolidated Indebtedness (as defined) and performance of all of its obligations under the Note, the Loan Agreement and the other Loan Documents.  *See* Ex. B (Mortgage) at Recital I.

32. The Mortgage creates a first-priority lien and security interest in all of Borrower's present and future real, personal, tangible and intangible property, rights, interest and estates, collectively defined in the Mortgage as the "Property," including but not limited to the Land and the Improvements, together with the Equipment, Fixtures and Personal Property as defined in the Mortgage.  *See* Ex. B (Mortgage) § 1.1.

33. The Loan Agreement provides that "Borrower shall pay to Lender . . . on the Maturity Date," which is to occur no later than the Stated Maturity date of August 6, 2022, "the Outstanding Principal Balance, all accrued and unpaid interest and all other amounts due hereunder and under the Note, the Security Instrument and the other Loan Documents."  *See* Ex. D (Loan Agreement) § 2.3.3 and at pp. 17 (defining "Maturity Date") and 30 (defining "Stated Maturity Date").

34. The Loan Agreement further provides that it shall constitute an Event of Default "if any portion of the Debt is not paid when due (including, without limitation, the failure

of Borrower to repay the entire outstanding principal balance of the Note in full on the Maturity Date)." *See* Ex. D (Loan Agreement) § 8.1(a)(i).

35. The Loan Agreement also provides that, "[i]n the event that, and for so long as, any Event of Default shall have occurred and be continuing, the Outstanding Principal Balance and, to the extent permitted by law, all accrued and unpaid interest in respect thereof and any other amounts due pursuant to the Loan Documents, shall accrue interest at the Default Rate," which is defined to "mean a rate per annum equal to the lesser of (a) the Maximum Legal Rate and (b) five percent (5%) above the Interest Rate [of 4.25%]." *See* Ex. D (Loan Agreement) § 2.2.3 and at pp. 6 (defining "Default Rate") and 12 (defining "Interest Rate").

36. The Mortgage provides that "Borrower shall pay to Lender on demand any and all expenses, including reasonable legal expenses and attorneys' fees and costs, incurred or paid by Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default." *See* Ex. B (Mortgage) § 1.3; *see also* Ex. D (Loan Agreement) § 5.1.14.

37. The Loan Agreement provides that Borrower agrees to pay or reimburse Lender for:

> all costs and expenses, liquidation fees, workout fees, special servicing fees, operating advisor fees or any other similar fees payable by Lender to Servicer which may be due and payable under the Servicing Agreement (whether on a periodic or a continuing basis) as a result of an Event of Default under the Loan, the Loan becoming specially serviced, the commencement or continuance of any enforcement action of any kind with respect to the Loan or any of the Loan Documents, a refinancing or a restructuring of the credit arrangements provided under this Agreement in the nature of a "work-out" of the Loan Documents, or any Bankruptcy Action involving any Individual Borrower, Principal, Guarantor or any of their respective principals or Affiliates.

*See* Ex. D (Loan Agreement) § 9.3.

8

38. The Mortgage provides that, upon the occurrence and during the continuance of an Event of Default, Lender may "institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law." *See* Ex. B (Mortgage) § 7.1(b).

### D. Borrower's Default on Its Obligations

39. Borrower failed to pay to Lender the Outstanding Principal Balance, all accrued and unpaid interest and all other amounts due under the Loan Documents on or before the Maturity Date of August 6, 2022.

40. Borrower's failure to pay the amounts due at the Maturity Date constitutes an Event of Default under the Loan Documents. *See* Ex. D (Loan Agreement) § 8.1(a)(i).

41. Lender, through its counsel, provided a Notice of Default and Demand for Payment by letter dated August 10, 2022 (the "Notice of Default"), a copy of which is attached hereto as **Exhibit L**, which advised Borrower that it was in default under the Loan Documents by virtue of failing to pay the amounts due on the Maturity Date.

42. The Notice of Default further advised Borrower that, "[i]n the event the amounts owed are not paid in full within seven days of the date of this Notice, Lender may, at its sole discretion, proceed to exercise any and all of the remedies available under the Loan Documents, at law and in equity, including but not limited to filing an action to foreclose the mortgage." *See* Ex. O (Notice of Default) at p. 2.

43. Notwithstanding the Notice of Default, Borrower has failed to cure the ongoing Event of Default by paying in full the amounts due on the Loan.

44. Accordingly, Lender brings this action to foreclose the Mortgage.

**COUNT ONE – MORTGAGE FORECLOSURE**

45. Paragraphs 1 through 44 of this Complaint are incorporated herein by reference.

46. Borrower executed the Note, which is secured by the Mortgage, in favor of Lender.

47. Borrower has defaulted on its obligations under the Note, the Mortgage, the Loan Agreement and the other Loan Documents.

48. Lender is authorized by the Mortgage and by New York law to foreclose the Mortgage in the event of a default by Borrower.

49. Lender is the sole, true, and lawful owner and holder of the Note, the Mortgage and the Loan Documents, and is owed all sums now due pursuant thereto.

50. All conditions precedent necessary to bring the claims set forth herein have been satisfied.

51. Attorneys' fees, late charges, interest (at the Default Rate), costs and other amounts due and owing under the Loan Documents continue to accrue as set forth in the Loan Documents.

52. In order to protect its interest in the Property, Lender has paid and/or may be compelled to pay during the pendency of this action local taxes, assessments, water rates, sewer rents, insurance premiums, and/or other charges to protect and preserve, or affecting, the Property. Lender requests that any such sums paid by it for any such purposes, together with interest thereon, be added to the total sum due to it by Borrower, be deemed secured by the Mortgage, and be adjudged a valid lien on the Property.

53. There is no other action or proceeding pending at law or otherwise for the collection of the indebtedness evidenced by the Note, and no judgment has been entered in favor

of Lender or against any of the defendants for such indebtedness other than the judgment that was previously entered and subsequently vacated in this action.

54. Lender requests that in the event the action proceeds to judgment of foreclosure and sale, that judgment provide for the sale of the Property in such manner and order as shall be most likely to, and to the extent necessary to, satisfy the total amount adjudged due to Lender.

WHEREFORE, Lender respectfully requests that the Court enter judgment in its favor and against Borrower on Count One of the Complaint and that:

(a) Each and all of the defendants, and all persons claiming under any of them, and every person or entity whose right, title, conveyance or encumbrance is recorded subsequent to the commencement of this action and the filing of a notice of pendency thereof, be barred and forever foreclosed of and from all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Property, including the fixtures and articles of personality upon which the Mortgage is a lien;

(b) The Property may be decreed to be sold, according to law, and that the monies arising from such sale be brought into Court;

(c) Lender may be paid the amount due on the Loan Documents, with interest to the time of such payment, and the expenses of such sale, including attorneys' fees, together with the costs, allowances and disbursements of this action, and together with any sums incurred by Lender pursuant to any term or provision of the Loan Documents or to protect the lien of the Mortgage and the sums which may have been paid by Lender to protect the security afforded by the Mortgage and the liens thereon to be paid, together with interest upon those sums from the dates of the respective payments and

advances thereof, so far as the amount of such monies properly applicable thereto will pay the same;

(d) In the event that Lender possess any other lien(s) against the Land, Rents, or Personal Property either by way of judgment, junior mortgage or otherwise, such other lien(s) shall not be merged in Lender's cause(s) of action set forth in this Complaint but that Lender shall be permitted to enforce the other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings; and

(e) Lender be awarded such other and further relief as the Court in its discretion may deem just and proper.

Dated: July 17, 2024

/s/ Raymond A. Quaglia
Raymond A. Quaglia
Ana Blanco
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY  10019-5820
(646) 346-8072
quaglia@ballardspahr.com
blancoa@ballardspahr.com

Counsel for Plaintiff

DMFIRM #411066313 v2